**Betty J. HOLDERFIELD, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

No. 02–3366.

United States Court of Appeals, Federal Circuit.

DECIDED: April 17, 2003.

Betty J. Holderfield, of Ooltewah, Tennessee, pro se.

Calvin M. Morrow, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were Martha B. Schneider, Acting General Counsel; and Stephanie M. Conley, Reviewing Attorney.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Betty J. Holderfield petitions for review of the final decision of the Merit Systems Protection Board dismissing her Individual Right of Action ("IRA") appeal for lack of jurisdiction. *Holderfield v. Dep't of Treasury*, No. AT–1221–01–0306–W–1, 92 M.S.P.R. 227, 2002 WL 1377912 (M.S.P.B. June 21, 2002) (final order). Because the Board's decision contains legal error, we vacate and remand.

## BACKGROUND

Ms. Holderfield is employed as a revenue agent at the Internal Revenue Service's ("IRS's") Dalton, Georgia facility. On October 18, 1999, Holderfield filed the first of a series of grievances alleging that her supervisor, Susan A. Chambers, had acted unlawfully in, *inter alia,* failing to promote her and giving her unfair performance appraisals. She later settled the grievances on favorable terms, obtaining, among other things, removal of all performance appraisals by Chambers from her employee file, restoration of ratings given by her former supervisor, and a temporary promotion that could later be made permanent.

Meanwhile, on August 16, 1999, Holderfield initiated this IRA by submitting an

affidavit to the Treasury Inspector General for Tax Administration ("TIGTA") alleging that she had been subjected to retaliation for her disclosure of favoritism between Chambers and her IRS subordinate and live-in companion Mary Sexton. On October 25, 1999, the TIGTA filed a complaint on her behalf at the Office of Special Counsel ("OSC").

After the OSC closed its investigation without taking any action, Holderfield appealed to the Board. Assuming without deciding that Holderfield had made a protected disclosure, the Administrative Judge ("AJ") assigned to the case issued an Order to Show Cause directing her to specifically identify the adverse personnel action she had suffered. *Holderfield v. Dep't of Treasury*, No. AT–1221–01–0306–W–1 (M.S.P.B. Feb. 16, 2001) (order to show cause). In response, Holderfield presented a list of eighteen alleged personnel actions. *Holderfield v. Dep't of Treasury*, No. AT–1221–01–0306–W–1, slip op. at 3–4 (M.S.P.B. Apr. 24, 2001) ("*Initial Decision*"). The AJ determined that all but two were not "personnel actions," as defined by 5 U.S.C. § 2302(a)(2). *Id.* at 4. As to the remaining two—inappropriate use of performance evaluations and obstruction from competing for promotion—the AJ found them to have been the subject of the grievance procedure and therefore not eligible for a whistleblower IRA, pursuant to 5 U.S.C. § 7121(g). *Id.* at 6–7. Because Holderfield had failed to show that the agency had taken a "personnel action" against her except for those subject to a grievance, the AJ dismissed her whistleblower claim for lack of Board jurisdiction. *Id.* at 2, 7.

Holderfield appealed the AJ's initial decision to the full Board, which denied her petition for review, thus rendering the initial decision final. *See* 5 C.F.R. § 1201.113(b) (2001). Holderfield timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

█ The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); *Gibson v. Dep't of Veterans Affairs*, 160 F.3d 722, 725 (Fed.Cir. 1998). However, we review the Board's conclusion concerning its own jurisdiction without deference. *Bolton v. MSPB*, 154 F.3d 1313, 1316 (Fed.Cir.1998).

█ Holderfield argues that the Board misapplied 5 U.S.C. § 2303(a)(2). Specifically, she argues that the term "personnel action" encompasses all "significant changes in duties, responsibilities, or working conditions," and that the Board did not appreciate the impact that the agency's actions had on her. She further contends that the grievance settlement did not resolve all of her complaints. She seeks an evidentiary hearing in which she can present evidence proving her allegations of "personnel actions."

The government responds that the AJ properly determined as a matter of law that Holderfield failed to identify specific ways in which she was affected that constituted personnel actions within the meaning of section 2302(a). The government contends that generalized assertions without reference to specific concrete actions taken, proposed, or threatened to be taken against an employee cannot constitute a personnel action. The government also contends that the AJ properly found that Holderfield's grievance precluded the Board from taking jurisdiction over her

performance evaluation and promotion claims.

We agree with Holderfield that the Board failed to completely analyze her allegations that she was subjected to "personnel actions." Congress has defined the term "personnel action" for purposes of whistleblower protection to include certain enumerated actions. Title 5, section 2302(a)(2)(A) defines a "personnel action" as:

> (i) an appointment; (ii) a promotion; (iii) an action under chapter 75 of this title or other disciplinary or corrective action; (iv) a detail, transfer, or reassignment; (v) a reinstatement; (vi) a restoration; (vii) a reemployment; (viii) a performance evaluation under chapter 43 of this title; (ix) a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph; (x) a decision to order psychiatric testing or examination; and (xi) any other significant change in duties, responsibilities, or working conditions.

5 U.S.C. § 2302(a)(2)(A) (2000).

We have examined the eighteen allegations of "personnel actions" that Holderfield has presented to both the Board and this court. With one exception, we discern no error in the AJ's determinations concerning whether they fall within the statutory definition. The AJ characterized sixteen of those allegations as being generalized complaints, concerning actions not directed specifically at Holderfield, or not sufficiently analogous to an adverse action. *Initial Decision* at 5. However, the AJ did not explicitly analyze whether any of her allegations individually or collectively fall under category (xi) relating to a "significant change in ... working conditions." Three of the allegations refer explicitly to "working conditions": "discriminatory working conditions biased in favor of a manager's roommate," "hostile work conditions for the appellant and others," and "knowingly allow[ing] the working conditions to be so poor that an occupational disease in the appellant became manifest." *Id.* at 3. Others of the allegations do not recite the phrase "working conditions" but arguably relate to working conditions (*e.g.*, denial of courteous treatment, office morale problems, and being subject to profanity, yelling, embarrassment, and harassment in the workplace). *Id.* While some of these allegations are indeed generalized, others are sufficiently specific and concrete, *e.g.*, profanity, yelling, and development of an occupational disease, to support an allegation relating to working conditions. *Cf. Godfrey v. Dep't of Air Force*, 45 M.S.P.R. 298, 303 (1990) (stating that Board jurisdiction over an IRA appeal requires more than "generalized assertions and fears *unsupported by reference to any specific matter*" (emphasis added)).

Since the Board did not address the "working conditions" definition of a personnel action, and we are not able to review its decision without its analysis, we must vacate the Board's decision and remand for further proceedings. On remand the Board should determine whether the allegations relating to working conditions amount to a "significant" change, as the statute requires; whether they are nonfrivolous; whether they are precluded from being the basis of an IRA by election of a grievance procedure; and finally whether the allegations are sufficient to establish jurisdiction under the test set forth in *Willis v. Department of Agriculture*, 141 F.3d 1139, 1142 (Fed.Cir.1998) (holding that the Board has jurisdiction over an IRA appeal if, in addition to show-

ing exhaustion of OSC remedies, the appellant makes non-frivolous allegations that (1) she made a protected disclosure and (2) based on the disclosure, the agency took or failed to take a personnel action as defined by 5 U.S.C. § 2302(a)). *See also Yunus v. Dep't of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed.Cir.2001) (same). Those are determinations for the Board in the first instance. The Board should also determine whether the allegations are reprisals for protected disclosures, which are relevant to the second element, or actions that are the subject of those disclosures, which cannot satisfy the second element but may be relevant to the first. At this stage in the proceedings, we hold only that the allegations relating to working conditions are directly relevant to category (xi) of the statutory definition and are not so lacking in detail that they can be summarily dismissed.

As to the two personnel actions that the Board found, and the government concedes, fall within the statutory definition—tainted performance evaluations and obstruction with promotion opportunities—substantial evidence supports the AJ's findings that those two actions were the subject of the earlier grievance. According to 5 U.S.C. § 7121(g), an aggrieved employee may select only one remedy from the following choices: a direct appeal to the Board, a negotiated grievance procedure, or seeking corrective action from the OSC. *See* 5 U.S.C. § 7121(g)(2)-(3) (2000). Holderfield elected the grievance procedure as to all issues regarding her performance evaluations and promotion opportunities when she filed a written grievance. *See* 5 U.S.C. § 7121(g)(4)(B). The AJ correctly interpreted and applied 5 U.S.C. § 7121(g) to bar its jurisdiction over the same claims. It matters not that Holderfield is not entirely satisfied with the outcome of the grievance. Simply because she elected to file a grievance con-

cerning those two personnel actions, she is now foreclosed from pursuing an IRA appeal as another remedy for the same allegedly unlawful personnel actions.

We have carefully considered Holderfield's remaining arguments and find them unconvincing. In summary, the Board correctly held that two of Holderfield's purported "personnel actions" are precluded by election of an alternative remedy from being a basis for an IRA. As for the other purported "personnel actions," we also agree with the Board that they are outside the statutory definition, except for those relating to category (xi). Because the Board failed to analyze her allegations with respect to that category, we vacate the Board's dismissal and remand for the Board to perform that analysis.

*VACATED* AND *REMANDED.*