**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RAJESH K. GUPTA,

        Appellant,

        v.

DEPARTMENT OF HEALTH AND
   HUMAN SERVICES,

        Agency.

DOCKET NUMBER
DC-1221-13-0650-W-1

DATE: April 22, 2016

# THIS ORDER IS NONPRECEDENTIAL[1]

Rajesh K. Gupta, North Potomac, Maryland, pro se.

James E. Simpson, Esquire, Washington, D.C., for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the regional office for further adjudication in accordance with this Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant was the Deputy Division Director and Lab Chief for an agency component that is responsible for, among other things, ensuring the quality and safety of vaccines before they are released into the market. Initial Appeal File (IAF), Tab 1 at 2. The agency terminated the appellant, and the appellant filed a Form 11 complaint and a stay request with the Complaints Examining Unit (CEU) of the Office of Special Counsel (OSC) alleging that the agency took numerous personnel actions against him in retaliation for protected whistleblowing.[2] IAF, Tab 1, Exhibits (Exs.) 13-14. On March 26, 2013, OSC notified the appellant that it had closed its file without taking corrective action. IAF, Tab 1, Ex. 18. It informed him of his right to file an IRA appeal with the Board. *Id.*

¶3 The appellant filed the instant appeal and requested a hearing. IAF, Tab 1 at 3. After affording the appellant notice of how to establish jurisdiction over his appeal and taking documentary evidence and argument on the issue, the administrative judge dismissed the appeal for lack of jurisdiction without a hearing. IAF, Tab 3, Tab 14, Initial Decision (ID) at 1, 8. She found that the appellant failed to exhaust his administrative remedies concerning the claims that he was attempting to bring in his Board appeal because his submissions to OSC lacked sufficient specificity to form the basis for an OSC investigation. ID at 6-7. The appellant has filed a petition for review, Petition for Review (PFR) File, Tab 5, the agency has filed a response, PFR File, Tab 9, and the appellant has filed a reply to the agency's response, PFR File, Tab 10.

---

[2] The Form 11 has been developed by OSC for submitting whistleblower reprisal complaints. OSC has also developed a Form 12, which is used to submit disclosures of government wrongdoing to OSC. *See Clemente v. Department of Homeland Security*, 101 M.S.P.R. 519, ¶ 13 (2006).

¶4        To establish jurisdiction over an IRA appeal, an appellant must prove that he exhausted his administrative remedies with OSC and nonfrivolously allege that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 25 (2013). To satisfy the OSC exhaustion requirement, the appellant must inform OSC of the precise ground of his charge of whistleblowing, giving OSC a sufficient basis to pursue an investigation that might lead to corrective action. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 12 (2014), *aff'd,* 623 F. App'x 106 (Fed. Cir. 2015); *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 5 (2012). An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. *Kukoyi v. Department of Veterans Affairs*, 111 M.S.P.R. 404, ¶ 13 (2009), *overruled on other grounds by Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶26 n.7 (2011). The test of the sufficiency of an employee's charges of whistleblowing to OSC is the statement that he makes in the complaint requesting corrective action, not his post hoc characterization of those statements. *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1036 (Fed. Cir. 1993); *Clarke*, 121 M.S.P.R. 154, ¶ 12.

¶5        The appellant bases his IRA appeal on 11 alleged protected disclosures. IAF, Tab 8. Accordingly, with regard to each disclosure, the Board must determine whether the appellant: exhausted his administrative remedies before OSC; made nonfrivolous allegations that the disclosure was protected; and made nonfrivolous allegations that it was a contributing factor in a personnel action.

Parameters of the Exhaustion Evidence

¶6        The appellant made numerous filings with OSC.  These include a January 21, 2013 whistleblower complaint to OSC's CEU, a March 1, 2013 stay request to the CEU, a January 21, 2013 submission to OSC's Disclosure Unit, and a May 23, 2013 submission to the CEU.  IAF, Tab 1, Attachment (Att.) 1; IAF, Tab 1, Exs. 9, 13-14.  In her exhaustion analysis, the administrative judge considered only the January 21, 2013 whistleblower complaint and the March 1, 2013 stay request to OSC's CEU.  ID at 2.  She reasoned that the appellant's January 21, 2013 submission to the Disclosure Unit was not submitted to the CEU and therefore was irrelevant to a determination of whether he satisfied the exhaustion requirement of 5 U.S.C. § 1214(a)(3).[3]  ID at 2; *see Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 16 (2011).

¶7        In reviewing the evidence that was considered by the administrative judge, we find that the appellant exhausted his administrative remedies before OSC as to six of these disclosures; specifically, disclosures 1, 4, 5, 7, 8, and 10.  We find that the appellant did not exhaust his administrative remedies concerning disclosures 3 and 11.  While the appellant has submitted a March 4, 2013 email

---

[3] Regarding the appellant's May 23, 2013 submission to OSC's CEU, this submission does not satisfy the exhaustion requirement for this appeal.  IAF, Tab 1, Att. 1.  OSC already had closed its file on the appellant's complaint and notified him of his Board appeal rights on March 26, 2013.  IAF, Tab 1, Ex. 18.  The close-out letter was the key document triggering the appellant's right to appeal to the Board.  *See* 5 U.S.C. § 1214(a)(3)(A); 5 C.F.R. § 1209.5(a).  Any subsequent communications with OSC may have triggered a new investigation and begun a new exhaustion process, but they have nothing to do with the exhaustion process that concluded on March 26, 2013.  On review, the appellant requests that the Board stay the instant appeal pending OSC's action on the May 23, 2013 letter, which he alleges "concern[s] the same issues and facts" as the instant appeal.  PFR File, Tab 1 at 4-6.  The agency requests that the petition for review be dismissed on the same basis.  PFR File, Tab 9 at 6-12.  We deny the parties' requests at this time because a significant period of time has elapsed without any update on the status of the matter before OSC.  However, the parties are not precluded from renewing their requests before the administrative judge, who will be in a better position to make rulings on them; she will have both the benefit of this Order delineating the proper scope of the instant appeal and, presumably, updated information on OSC's processing of the appellant's May 23, 2013 letter.

on review indicating that he did, in fact, provide CEU a copy of his January 21, 2013 submission to the Disclosure Unit and various other documents before OSC closed out his whistleblower reprisal complaint, PFR File, Tab 5 at 8-9, 30, consideration of this evidence does not alter our finding that the appellant failed to exhaust his administrative remedies concerning disclosures 3 and 11. However, consideration of such evidence may change the exhaustion analysis regarding disclosures 2, 6, and 9. We do not, therefore, make findings on these disclosures in our jurisdictional analysis below. Rather, as specified below, the administrative judge on remand will conduct an exhaustion analysis concerning disclosures 2, 6, and 9 in light of the appellant's March 4, 2013 email.

Disclosure 1

¶8      In his Board appeal, the appellant alleged that he raised public health and safety concerns regarding the agency's amendment to 21 C.F.R. § 610.12, "Sterility Test Requirements for Biological Products." IAF, Tab 8 at 5. Specifically, he alleged that he opposed the agency removing the regulatory requirement that vaccines undergo sterility testing at the final "bulk" stage. *Id*. He lists numerous written and oral communications through which he made this disclosure. *Id*.

¶9      We have reviewed the appellant's original OSC complaint. It contains practically no information about this or any of his other 10 alleged protected disclosures. IAF, Tab 13. The complaint merely describes these disclosures generically as "raising unanswered scientific issues during reviews of license applications and supplements that affect public safety and efficacy of our products," "bringing to attention deficiencies in reviews performed by my staff," "objections to wasteful spending by the Division," and "mismanagement in the Division." IAF, Tab 1, Ex. 13 at 4-5. We agree with the administrative judge that these statements by themselves are not sufficiently specific to provide the basis for an OSC investigation. ID at 3.

¶10    We also have reviewed the appellant's March 1, 2013 stay request.  IAF, Tab 1, Ex. 14.   Although nothing in that document refers to the appellant's opposition to any regulatory amendments per se, it does refer to his continued advocacy for bulk stage sterility testing despite opposition from the Division Director, the same agency official who eventually terminated the appellant's employment.  *Id*. at 2, 11-12.  Thus, the appellant informed OSC of the nature of the disclosure and one of the individuals to whom he made the disclosure.  He also informed OSC of the general timeframe of the disclosure—September 2012.  *Id*. at 2.  Furthermore, this stay request, in conjunction with the appellant's original OSC complaint, was sufficient to apprise OSC of at least some subsequent personnel actions that the Division Director allegedly took against the appellant in retaliation, including his placement on administrative leave, termination from employment, and what might arguably be described as significant changes in duties, responsibilities, or working conditions.  IAF, Tab 1, Ex. 13 at 5-11.  We find that this information provided OSC an adequate basis to begin an investigation into this disclosure and its circumstances.

¶11    We further find that the appellant made a nonfrivolous allegation that he reasonably believed that the lack of sterility testing at the bulk stage presented a substantial and specific danger to public health and safety, *see* 5 U.S.C. § 2302(b)(8)(A)(ii), because it would seem on its face that some sort of sterility testing for vaccines is important; otherwise the agency's regulations would not require it at all, *see* 21 C.F.R. § 610.12.  The potential impact on public health and safety from contaminated vaccines is self-evident.  The appellant's expertise in the area of public health further supports our conclusion that he, at least, has made a nonfrivolous allegation that his belief was reasonable.  IAF, Tab 8 at 6; *see Chambers v. Department of the Interior*, 602 F.3d 1370, 1379 (Fed. Cir. 2010) (finding that the appellant's expertise in public safety supported the reasonableness of her belief that the reallocation of police officers constituted a substantial and specific danger to public health and safety).  He will have the

opportunity to present proof by preponderant evidence as to whether his belief was reasonable at a hearing.

¶12     We also find that the appellant has made a nonfrivolous allegation through the knowledge/timing test that this disclosure was a contributing factor to the personnel actions with which the Division Director was involved from September 2012 up to the February 25, 2013 termination decision.  IAF, Tab 1, Ex. 14 at 11-12; *see* 5 U.S.C. § 1221(e)(1) (the contributing factor element may be established through circumstantial evidence, such as a showing that the person taking the personnel action knew of the protected disclosure and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor); *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008) (explaining that once an appellant has satisfied the knowledge/timing test, he has demonstrated that a protected disclosure was a contributing factor in a personnel action); *Rubendall v. Department of Health & Human Services*, 101 M.S.P.R. 599, ¶ 13 (2006) (finding that a gap of less than 6 months between a disclosure and a personnel action is sufficiently proximate to satisfy the timing prong of the knowledge/timing test).

Disclosure 2

¶13     The appellant describes his second disclosure as protesting that the regulatory amendment removed a requirement to test new sterility testing methods against old methods to ensure that the new methods are as effective as the old ones.  IAF, Tab 8 at 8.  He describes this process in shorthand as "methodology of sterility testing."  *Id*.  For reasons previously discussed, we will not make jurisdictional findings on this disclosure.  *See supra* ¶7.

Disclosure 3

¶14     The appellant characterizes his third disclosure as concerning a substantial and specific danger to public health and safety for failure to perform sterility testing at the bulk stage on a particular drug, Flucelvax.  IAF, Tab 8 at 10.  We

have reviewed the appellant's OSC complaint, his stay request, OSC's preliminary determination letter, and the September 5, 2012 and January 23, 2013 emails, and we find insufficient information to conclude that he provided OSC an adequate basis to investigate this disclosure and its attendant circumstances. IAF, Tab 1, Exs. 1, 10, 13-14, 17. None of these documents even contain the word "Flucelvax." Although the appellant's stay request generically refers to "release of lots of vaccines for healthy population without required testing," we find that this was not sufficiently informative for OSC to begin an investigation concerning his alleged disclosures regarding the safety of Flucelvax. IAF, Tab 1, Ex. 14 at 1. We thus find that the appellant did not exhaust his administrative remedies as to disclosure 3.

Disclosure 4

¶15    The appellant characterizes his fourth disclosure as pertaining to the lack of adequate sterility testing for another vaccine—Flublok. IAF, Tab 8 at 12-13. He brought the matter to OSC's attention in his stay request as follows:

> Beginning in Summer 2012, [the appellant] voiced his concerns with the questionable safety, efficacy and potential unsafe manufacturing process for the Influenza Vaccine Flublok. His supervisor, [the Division Director], ordered him not to raise his concerns at review committees for this vaccine. [The appellant] asked the reviewers in his Division if they would administer this vaccine to themselves or loved ones. They all responded, "No."

IAF, Tab 1, Ex. 14 at 2. This articulation of the issue is not ideal; it is rather imprecise in that it does not provide exact dates, incidents, or documents connected to this disclosure. Nevertheless, it identified one of the individuals to whom the appellant made the disclosure and the approximate timeframe of the disclosure. *Id*. In addition, the January 23, 2013 email mentions the appellant's concerns about Flublok, stating that he discussed the matter with the Division Director "a few days back," and confirming in the address line that the Division Director, the Office Director, and several other individuals received the disclosure in writing. IAF, Tab 1, Ex. 10 at 1-2. The OSC complaint lists several

allegedly retaliatory personnel actions to which the appellant alleges the Office and Division Directors subjected him. IAF, Tab 1, Ex. 13 at 5-11. Reading these documents in conjunction, we find that they provided OSC an adequate starting point for an investigation into disclosure 4.

¶16 For the same reasons as discussed above in connection with disclosure 1, we find that the appellant made a nonfrivolous allegation that he reasonably believed that the sterility testing was inadequate and posed a substantial and specific danger to public health and safety. IAF, Tab 8 at 13-14; *supra* ¶ 14.

¶17 We also find, for the same reasons discussed in connection with disclosure 1, that the appellant has made a nonfrivolous allegation through the knowledge/timing test that this disclosure was a contributing factor to the personnel actions with which the Division Director was involved from the summer of 2012 up to the February 25, 2013 termination decision. *Supra* ¶ 15.

Disclosure 5

¶18 The appellant characterizes his fifth disclosure as reporting to upper level management that he had been suffering hostility and harassment in reprisal for his protected disclosures. IAF, Tab 8 at 15-16. We find that he exhausted this matter with OSC. The September 5, 2012 and January 23, 2013 emails themselves are more or less litanies of complaints in this regard, IAF, Tab 1, Exs. 1, 10, and OSC's preliminary determination letter shows that OSC construed them as such, stating that they constituted "disclosures concerning harassment and a hostile work environment," IAF, Tab 1, Ex. 17 at 2. The address lines of these emails show the individuals who received them, including the Office and Division Directors, IAF, Tab 1, Ex. 1 at 1, Ex. 10 at 1, and the appellant's OSC complaint sets forth various personnel actions to which some of these officials allegedly subjected him in retaliation, IAF, Tab 1, Ex. 13 at 5-11. We find that the appellant provided OSC a sufficient foundation for investigating this disclosure and the personnel actions that it supposedly precipitated.

¶19     We also find that the appellant made a nonfrivolous allegation that this disclosure evidenced a violation of law, rule, or regulation, i.e., retaliation for protected whistleblowing.  IAF, Tab 8 at 16; *see* 5 U.S.C. § 2302(b)(8) (it is a prohibited personnel practice to retaliate against an individual for engaging in whistleblowing activity).  The appellant alleged that he had been employed by the agency since September 2006, but that the alleged harassment and hostile work environment did not begin until he made the disclosures that are the subject of this appeal.  IAF, Tab 8 at 16.  We cannot make a definitive finding at this time on whether the appellant actually had a reasonable belief that the agency was retaliating against him for protected activity.  That determination will likely depend, in part, on whether the appellant reasonably believed that his other disclosures concerned the categories of wrongdoing set forth in 5 U.S.C. § 2302(b)(8)(A)(i) or (ii).  Nevertheless, we find that he has made a sufficient showing to bring this issue to a hearing.

¶20     We further find, as with disclosures 1 and 4, that the appellant made a nonfrivolous allegation of contributing factor through the knowledge/timing test as to disclosure 5 for matters occurring between September 5, 2012, through the date of his termination.  *See supra* ¶ 15.

Disclosure 6

¶21     In his Board appeal, the appellant describes disclosure 6 as involving numerous irregularities with safety tests for the pandemic H5N1 vaccine.  IAF, Tab 8 at 18.  For reasons previously discussed, we will not make jurisdictional findings on this disclosure.  *See supra* ¶ 7.

Disclosure 7

¶22     The appellant describes disclosure 7 as involving a gross waste of funds by the agency when it purchased certain software for $600,000 and never used it.  IAF, Tab 8 at 21.  The appellant specifically mentioned this matter in his stay request.  He informed OSC that he opposed the original purchase of the software

in 2011 and 2012 and that "[t]his drew the ire of the [Division Director]." IAF, Tab 1, Ex. 14 at 2. Although not a particularly detailed account of this disclosure, we find that, read in conjunction with the appellant's original complaint outlining the actions that the Division Director allegedly took against him, it was adequate to form the basis of an OSC investigation. IAF, Tab 1, Ex. 10 at 5-10. Specifically, the appellant provided OSC with a fairly precise account of the nature of the disclosure, the approximate timeframe, and the name of the individual who allegedly retaliated against him for it. IAF, Tab 1, Ex. 14 at 2. Thus, OSC at least had the name of an individual other than the appellant with whom it could follow up, as well as the basis for some questions to that individual. We find that the appellant exhausted his administrative remedies concerning disclosure 7.

¶23 We also find that the appellant made a nonfrivolous allegation that he reasonably believed that the expenditure was a gross waste of funds. In particular, he alleged that the software proved to be "of limited to no use," and that it was easily available for significantly less money. IAF, Tab 8 at 22. On its face, the expenditure of $600,000 on useless or near useless software would appear to be a gross waste of funds. The appellant will have the opportunity at a hearing to put on evidence concerning the utility of the software and the reasonableness of his belief in order to prove the matter by preponderant evidence.

¶24 In addition, we find that the appellant's allegation that the Division Director knew about this 2011 or 2012 disclosure, coupled with its relative temporal proximity to the personnel actions that occurred between 2012 and the February 25, 2013 termination decision, is sufficient to constitute a nonfrivolous allegation that this disclosure was a contributing factor under the knowledge/timing test. *See Ontivero v. Department of Homeland Security*, 117 M.S.P.R. 600, ¶ 23 (2012) (finding that a personnel action taken

within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge/timing test).

Disclosure 8

¶25    Disclosure 8 is similar to disclosure 7. Whereas disclosure 7 involves the appellant's opposition to the original purchase of the software, disclosure 8 involves his opposition to its renewal in September 2012. The appellant apprised OSC of disclosure 8 in the same portion of the stay request in which he apprised OSC of disclosure 7. IAF, Tab 1, Ex. 14 at 2. For the same reasons as discussed above in connection with disclosure 7, we find that the appellant exhausted his administrative remedies regarding disclosure 8, made a nonfrivolous allegation that he reasonably believed that it concerned a gross waste of funds, and made a nonfrivolous allegation that the knowledge/timing test is satisfied as to the personnel actions that occurred thereafter involving the Division Director. *Supra* ¶¶ 22-28; IAF, Tab 8 at 23-24.

Disclosure 9

¶26    The appellant describes disclosure 9 as involving "intellectual stealing." IAF, Tab 8 at 25. Specifically, he alleges that he was an author of a study and that the agency submitted an abstract of that study for approval without his consent and with the inclusion of "unqualified individuals" for authorship credit. *Id.* He alleges that the agency's actions constituted gross mismanagement, an abuse of authority, and a violation of law, rule, or regulation. *Id.* For reasons previously discussed, we will not make jurisdictional findings on this disclosure. *See supra* ¶ 7.

Disclosure 10

¶27    The appellant describes disclosure 10 as concerning "the lack of control and management of critical standards used in testing and release of vaccines for children." IAF, Tab 8 at 27. He raised this matter in his OSC stay request as follows:

> Over several years, [the appellant] shared his concerns that there was a lack of control of management of critical standards used in testing and release of childhood vaccines because the agency had been relying on manufacturers for this information. Again, [the Division Director] supported the appellant at first, but his support flagged through the latter part of 2012.

IAF, Tab 1, Ex. 14 at 2. This explanation of the disclosure is not particularly detailed, but the appellant explained that he raised this matter over the course of several years and that it was not until "the latter part of 2012" that he lost his Division Director's support. *Id.* Thus, we find the appellant gave OSC the subject matter of the disclosure at issue, the approximate timeframe of the disclosure, the name of an individual who knew of the disclosure, and through the appellant's original complaint, a series of personnel actions that that individual allegedly took against the appellant in retaliation. IAF, Tab 1, Ex. 13 at 5-11, Ex. 14 at 2. This was sufficient information for OSC to follow up on the allegation and begin an investigation. We therefore find that the appellant exhausted his administrative remedies regarding disclosure 10.

¶28 We also find that the appellant made a nonfrivolous allegation that he reasonably believed that his disclosure concerned a substantial and specific danger to public health and safety. IAF, Tab 8 at 27-28. That dangerous or ineffective childhood vaccines present such a danger is self-evident. The ultimate question of whether the appellant reasonably believed that vaccine manufacturers were not an appropriate source for these criteria will be resolved after further development of the record, including the appellant's requested hearing.

¶29 We further find, for the reasons explained in connection with disclosure 1 above, that the appellant has made a nonfrivolous allegation of the contributing factor element for disclosure 10 through the knowledge/timing test. *Supra* ¶ 15.

Disclosure 11

¶30 The appellant describes disclosure 11 as concerning various employees' falsification of time cards. Although this subject matter would doubtless qualify

as a protected disclosure, we find that the appellant did not exhaust his administrative remedies for disclosure 11. Neither the appellant's correspondence with OSC nor OSC's preliminary determination letter indicates that the appellant informed OSC of this disclosure.

Guidance for Adjudication on Remand

¶31    For these reasons, we find that the appellant has established jurisdiction over his appeal and we remand it for further adjudication. Because this appeal is complex, we believe that further adjudication on remand will benefit from the following guidance to the administrative judge: For disclosures 1, 4, 5, 7, 8, and 10, the appellant has exhausted his administrative remedies with OSC and made nonfrivolous allegations that they were protected. The appellant also has made a nonfrivolous allegation that they were contributing factors in the personnel actions that the agency took against him.[4]

¶32    There are at least two personnel actions involved in this appeal. First is the appellant's February 15, 2014 placement on administrative leave. IAF, Tab 1, Ex. 11; *see Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 14 (2011) (finding that placement on administrative leave is a "personnel action" for purposes of an IRA appeal). Second is the February 25, 2012

---

[4] As previously noted, the administrative judge did not consider the appellant's January 21, 2013 submission to the Disclosure Unit because there was no indication that the appellant had provided it to the CEU. For the first time on review, the appellant has submitted a March 4, 2013 email indicating that he provided the CEU with a copy of his submission to the Disclosure Unit and various other documents before OSC closed out his whistleblower reprisal complaint. PFR File, Tab 5 at 8-9, 30. Because the evidence that the appellant submitted for the first time on review shows that he did, in fact, provide CEU with his January 21, 2013 Form 12 complaint to the Disclosure Unit, and because the appellant alleged below that he provided his January 21, 2013 submission to the CEU, the administrative judge should consider this evidence in determining whether the appellant exhausted his administrative remedies regarding disclosures 2, 6, and 9. The administrative judge should also consider the various documents attached to the appellant's March 4, 2013 email to the CEU in her exhaustion analysis. If the administrative judge determines that the appellant exhausted his administrative remedies concerning any of these disclosures, she should then determine whether the appellant established jurisdiction with regard to the disclosure.

termination decision.  IAF, Tab 1, Ex. 12; *see* 5 U.S.C. § 2302(a)(2)(A)(iii) (disciplinary or corrective action constitutes a personnel action).

¶33        There also may be a third personnel action involved.  The appellant alleges that the agency subjected him to a "hostile work environment."[5]  IAF, Tab 8 at 6, 14, 17, 22, 24, 28.  The creation of a hostile work environment is a personnel action for purposes of the Whistleblower Protection Act.  *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015); *see* 5 U.S.C. § 2302(a)(2)(A)(xii).  The appellant alleges that the agency, among other things, reassigned his staff to work for other supervisors, encouraged his staff to be insubordinate to him, denied him the opportunity to participate at a meeting in person, encouraged his staff to have their work reviewed by the Division Director rather than by the appellant, recommended some of his staff members for promotions and awards without his input, revised his job description so that nearly all of his duties were performed "at the direction of the Division Director," gave other individuals credit for his work, accused him of propagating a "culture of intimidation," and unceremoniously escorted him from the building when it placed him on administrative leave.  IAF, Tab 1, Ex. 10 at 5-11.  Although it is questionable whether any one of these actions alone would constitute a significant change in duties, responsibilities, or working conditions to create an actionable hostile work environment, we find that the appellant has made a nonfrivolous allegation that such was their cumulative effect.  *See Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003) (holding that numerous agency actions may amount to a covered personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) collectively, even if they are not covered personnel actions

---

[5] The appellant refers the Board to "Appendix B of Appeal" for further information on his allegations of a hostile work environment.  IAF, Tab 8 at 6, 14, 17, 22, 24, 28.  We were unable to locate an "Appendix B" in the initial appeal.  We instead have referred to his initial complaint to OSC, which discusses the matter in some detail.

individually).[6]  The appellant alleges that two individuals were involved in the allegedly retaliatory actions—the Office Director and the Division Director.[7] IAF, Tab 1, Ex. 13 at 11.

¶34      On remand, the administrative judge shall conduct a hearing.  *See Aquino v. Department of Homeland Security*, [121 M.S.P.R. 35](#), ¶ 9 (2014) (stating that once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim).  She shall determine whether the appellant met his burden of proving by preponderant evidence that disclosures 1, 4, 5, 7, 8, and 10 were protected (if she determines that the appellant has met his jurisdictional burden concerning disclosures 2, 6, and/or 9, the administrative judge shall also determine whether the appellant proved by preponderant evidence that the disclosure(s) were protected).  If the administrative judge finds that any of these disclosures were protected, then she shall decide whether the appellant established through the knowledge/timing test that they were contributing factors to the personnel actions that the agency took against the appellant after the date of his disclosures.  In this regard, the administrative judge shall determine

---

[6] The appellant alleged to OSC that the agency subjected him to two other personnel actions—a lowered performance rating for calendar year 2011, IAF, Tab 1, Ex. 13 at 5, 8-9; *see* [5 U.S.C. § 2302](#)(a)(2)(A)(viii) (a chapter 43 performance evaluation is a personnel action), and an October 1, 2012 letter warning him that "further instances of misconduct . . . may result in a formal disciplinary action," IAF, Tab 1, Ex. 13 at 5, 8-9; *see Campo v. Department of the Army*, [93 M.S.P.R. 1](#), ¶¶ 7-8 (2002) (finding that a memorandum of warning constituted a personnel action because it threatened to take a disciplinary action).  However, when the administrative judge ordered the appellant to identify the personnel actions that the agency took against him in reprisal, IAF, Tab 3 at 5, the appellant did not list these as separate personnel actions, *see* IAF, Tab 8. Nevertheless, these matters may be relevant to the appellant's claim that the agency subjected him to a significant change in duties, responsibilities, or working conditions.

[7] The appellant states in his Board appeal that "Other [agency] managers" contributed to the hostile work environment by pressuring his subordinates to "testify against him." IAF, Tab 8 at 7, 14, 17, 22, 24, 28.  He has not specifically identified these "other" managers, and he has not made a nonfrivolous allegation that anyone other than the Office Director and Division Director were involved in effecting personnel actions against him.

whether the appellant's claim of a "hostile work environment" amounts to a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii).  She also shall determine, for each protected disclosure, whether the Office Director, the Division Director, or both, satisfied the knowledge element of the test and were involved in effecting the personnel actions.  If the appellant establishes by preponderant evidence that a protected disclosure was a contributing factor to a personnel action, then and only then shall the administrative judge proceed to the issue of whether the agency established by clear and convincing evidence that it would have taken the personnel action in the absence of the protected disclosure.  *See* 5 U.S.C. § 1221(e)(2); *Clarke*, 121 M.S.P.R. 154, ¶ 19 n.10.

## ORDER

¶35     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:            _____

                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.