# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TENITA T. GIBSON,
  Appellant,

  v.

DEPARTMENT OF VETERANS
  AFFAIRS,
  Agency.

DOCKET NUMBER
AT-1221-20-0815-W-2

DATE: April 8, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Tenita T. Gibson, Stone Mountain, Georgia, pro se.

Kimberly K. Ward, Esquire, Decatur, Georgia, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision in this individual right of action (IRA) appeal, which denied her request for corrective action under the Whistleblower Protection Act (WPA). For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was a GS-11 Environmental Care Specialist for the agency's Atlanta Veterans Administration Medical Center. *Gibson v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-20-0815-W-1 Appeal File (W-1 AF), Tab 10 at 4. According to the appellant, in the summer and fall of 2014, she learned that coworkers were engaging in overtime fraud and abuse, and she reported the matter to the Environmental Management Services (EMS) Chief and Assistant Chief. *Id*. at 32. Around the same time, she began questioning the EMS Chief for allegedly improperly promoting the same two coworkers. *Id*. at 6, 32-33.

In late 2016 or early 2017, the agency announced a vacancy for the position of GS-12 Assistant Chief of EMS. *Id.* at 4, 14. The appellant applied for the vacancy, but on March 20, 2017, the agency notified her that it had selected another individual instead. *Id*. at 14. The EMS Chief was the selecting official for this vacancy. *Gibson v. Department of Veterans Affairs*, MSPB Docket No. AT-1221-20-0815-W-2 Appeal File (W-2 AF), Tab 9, Hearing Recording (HR) (testimony of the EMS Chief). According to the appellant, after the vacancy was filled, she disclosed to the EMS Chief that she believed he inappropriately manipulated the selection process and preselected the selectee. HR (testimony of the appellant).

Shortly after the appellant's nonselection, on April 4, 2017, she filed an equal employment opportunity (EEO) complaint, which included claims of, among other things, the above-referenced overtime fraud and abuse, alleged improper promotions of her two coworkers, and improper manipulation of the selection process for the GS-12 position. W-1 AF, Tab 10 at 4, 6, 15. Later that same year, on November 17, 2017, the appellant also reported the alleged

overtime theft and abuse beginning in 2014, to the agency's Office of Accountability and Whistleblower Protection (OAWP). *Id*. at 32-36, 94, 102-03. She told OAWP that one of her two coworkers had continued these practices from 2014 through 2017. *Id*. at 33.

In February of 2019, the agency initiated an investigation into the appellant's alleged misconduct of sending inappropriate texts of a personal nature to another agency employee with whom she previously had a consensual sexual relationship, who we refer to here as employee A, from her work cellphone, as well as other incidents.[2] W-1 AF, Tab 10 at 113-14, Tab 20 at 19-21. During that investigation, the appellant was temporarily transferred to a different duty location. W-1 AF, Tab 10 at 8. On July 15, 2019, the EMS Chief proposed to suspend the appellant for 7 days based on one of her alleged texts. W-1 AF, Tab 20 at 16-17. Specifically, he alleged that it was inappropriate for the appellant to send the profanity-laced text to employee A after he requested that she "please just leave [him] alone." *Id*. at 16. After the appellant responded, the Assistant Director for the Atlanta Veterans Administration Medical Center issued a decision sustaining the charge and suspending the appellant for 7 days, effective August 12, 2019. W-1 AF, Tab 1 at 7, Tab 20 at 11-15, 18.

On or about June 16, 2020, the appellant filed a complaint with the Office of Special Counsel (OSC) setting forth a general narrative of the above-described actions, and asserting that, in reprisal for her disclosures and activities, the agency subjected her to a hostile work environment, did not select her for the GS-12 position, temporarily transferred her to a different duty location, and suspended her for 7 days. W-1 AF, Tab 10 at 95-117. On July 15, 2020, OSC issued a letter advising the appellant that it was closing out its inquiry without taking corrective action. *Id*. at 113. In this letter, OSC described the appellant's OSC complaint as alleging that she "received a [7-]day suspension in August of

---

[2] This employee was not either of the coworkers who were the subject of the appellant's overtime disclosures. W-1 AF, Tab 20 at 16.

2019 and the agency mishandled an EEO investigation" in retaliation for her November 2017 OAWP complaint. *Id*.

The appellant then filed the instant IRA appeal and requested a hearing. W-1 AF, Tab 1. The administrative judge notified the appellant of her burden on the jurisdictional issue. W-1 AF, Tabs 5, 14. After the appellant responded, the administrative judge found that the appellant met her jurisdictional burden as to a single issue, "whether the appellant's disclosure to [OAWP] that [the EMS Chief] 'preselected' another employee for a promotion was a contributing factor in her [7]-day suspension." W-1 AF, Tab 16. The administrative judge identified a second issue as whether the Assistant Director of the Atlanta VA Health Care System exerted "undue influence" over the EEO investigation. *Id.* However, he found that the Board lacks jurisdiction over this claim. *Id*.

After a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action on the merits. W-2 AF, Tab 11, Initial Decision (ID). He found that the appellant failed to prove by preponderant evidence that her disclosure was protected, i.e., that she reasonably believed that the EMS Chief abused his authority in selecting the EMS Assistant Chief. ID at 4-7.

The appellant has filed a petition for review, disputing the administrative judge's finding that her disclosure was not protected and raising numerous other issues.[3] Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 4.

---

[3] After the close of the record on review, the appellant filed three separate motions for leave to submit additional evidence. PFR File, Tabs 6, 8, 9. Because we are remanding this appeal for other reasons, we deny these motions. The appellant will have the opportunity to submit additional evidence on remand that is relevant to the issues in this appeal.

**ANALYSIS**

We revisit the issue of jurisdiction sua sponte on review.

As noted above, the administrative judge found that the appellant established the Board's jurisdiction over the single claim of whether the appellant's disclosure to OAWP that the EMS Chief improperly manipulated the selection process to select another employee for the GS-12 position was a contributing factor in the appellant's 7-day suspension. W-1 AF, Tab 16 at 1. The parties do not directly challenge the administrative judge's jurisdictional findings on review. However, we have the obligation to determine the full extent of the Board's jurisdiction over this appeal. *See Parrish v. Merit Systems Protection Board*, 485 F.3d 1359, 1362 (Fed. Cir. 2007) (stating that "the Board has the authority, indeed the obligation, to determine its own jurisdiction over a particular appeal" (citation omitted)); *Giove v. Department of Transportation*, 89 M.S.P.R. 560, ¶ 8 (2001) (reiterating that jurisdiction is a threshold issue in adjudicating an appeal that is always before the Board and may be raised at any time during a Board proceeding), *aff'd per curiam*, 50 F. App'x 421 (Fed. Cir. 2002). Further, the appellant appears to re-raise some of her claims on review, referencing the disclosure regarding the improper promotions for two of her coworkers and her own temporary relocation. PFR File, Tab 1 at 9-11. We must first resolve the threshold issue of jurisdiction over these claims before proceeding to the merits. *See Schmittling v. Department of the Army*, 219 F.3d 1332, 1336-37 (Fed. Cir. 2000) (explaining that the Board cannot proceed to the merits in an IRA appeal without first determining that it has jurisdiction).

To establish the Board's jurisdiction over an IRA appeal, the appellant must prove by preponderant evidence that she exhausted her administrative remedy before OSC and make nonfrivolous allegations that: (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or protected activity was a contributing factor in

the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8; *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 11; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

The appellant alleged below that she made the following disclosures and engaged in the following activities:  disclosing overtime fraud and abuse around the summer of 2014; disclosing coworkers' improper promotions in the fall/winter of 2014; disclosing an improper manipulation of the selection process for the GS-12 position in 2017; filing an EEO complaint in April of 2017; and filing an OAWP complaint in November 2017.  W-1 AF, Tab 10 at 4, 6, 15-16, 32-36, 94, 102-03; HR (testimony of the appellant).  She further alleged that, in reprisal for these disclosures and activities, the agency subjected her to a hostile work environment, did not select her for the GS-12 position, temporarily transferred her, and suspended her for 7 days.  W-1 AF, Tab 10 at 6-11.  As briefly noted above, the appellant re-raises on review the improper promotions of her two coworkers and the temporary relocation.  PFR File, Tab 1 at 9-11.

<u>The appellant exhausted her administrative remedy with OSC.</u>

In his order finding Board jurisdiction, the administrative judge did not make express findings on exhaustion.  W-1 AF, Tab 16.  However, it appears that he implicitly found the appellant exhausted only the disclosures and personnel action that OSC identified in the close-out letter.  W-1 AF, Tab 10 at 113, Tab 16.  Such a finding is incorrect because an exhaustion determination must be made based on all the record evidence and not solely on OSC's letters.  *See Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶¶ 10-11 (2016) (finding that an administrative judge erred in making her exhaustion determination based on OSC's close-out and final determination letters without considering an email in the record from the appellant to OSC).  Therefore, we make new findings on the issue of exhaustion here.

An appellant may demonstrate exhaustion through her initial OSC complaint or correspondence with OSC. *Chambers*, 2022 MSPB 8, ¶ 11. She need only show that she advised OSC of the "core of [her] retaliation claim," thus giving "OSC sufficient basis to pursue an investigation." *Briley v. National Archives & Records Administration*, 236 F.3d 1373, 1377-78 (Fed. Cir. 2001); *see Chambers*, 2022 MSPB 8, ¶ 10 (explaining that an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC (citing *Briley*, 236 F.3d at 1378). Here, although the appellant's OSC complaint does not set forth the above allegations in a concise and delineated manner, we find that the general narrative provided in the OSC complaint contains the core of her claims as set forth above. W-1 AF, Tab 10 at 95-117. For example, her OSC complaint references the alleged overtime fraud and abuse, the improper promotions, the improper manipulation of the selection process for the GS-12 position, and the appellant's EEO and OAWP complaints. W-1 AF, Tab 10 at 102-08. Additionally, it references the alleged hostile work environment, the nonselection for the GS-12 position, the temporary transfer, and the 7-day suspension. *Id*. Further, the appellant's jurisdictional submission includes discussion of all of these claims. W-1 AF, Tab 10. Accordingly, we find that the appellant established by preponderant evidence that she exhausted her administrative remedy with OSC.

<u>The appellant nonfrivolously alleged that she made protected disclosures under 5 U.S.C. § 2302(b)(8) and engaged in protected activities under 5 U.S.C. § 2302(b)(9) with respect to all of her claims.</u>

The administrative judge found the appellant nonfrivolously alleged that she made one protected disclosure in her November 2017 OAWP complaint that the EMS Chief preselected the successful applicant for the GS-12 Assistant Chief position. W-1 AF, Tab 16; ID at 4. He identified the appellant's other exhausted disclosure as an allegation that the Assistant Director exercised "undue influence over a[] . . . deficient EEO investigation." W-1 AF, Tab 16. As noted above, the

administrative judge's analysis was limited in that he considered only two alleged disclosures. Therefore, we now address the entirety of the appellant's exhausted claims.

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id*. (citations omitted).

Here, the appellant alleged that she disclosed to the EMS Chief that two coworkers were "stealing or trumping up" their overtime hours and that one of those coworkers had told her of this activity directly. W-1 AF, Tab 10 at 15. Taking the appellant's allegations as true, we find that she has made a nonfrivolous allegation that she reasonably believed that her disclosure evidenced a violation of law, rule, or regulation, and was therefore protected under 5 U.S.C. § 2302(b)(8)(A)(i). *See DiGiorgio v. Department of the Navy*, 84 M.S.P.R. 6, ¶ 14 (1999) (finding that an appellant's disclosure of employees claiming overtime for hours that they did not work obviously implicated a violation of law, rule, or regulation).

The appellant also alleged that she disclosed to the EMS Chief that he improperly preselected two coworkers for promotions from the GS-7 level to GS-9 level, W-1 AF, Tab 10 at 6, 18, and that he improperly manipulated the selection process for the GS-12 position because she outscored the selectee on the interview but was nonetheless not selected, HR (testimony of the appellant).

Both disclosures could reasonably be categorized as disclosures evidencing an abuse of authority. The Board has historically defined an abuse of authority as an arbitrary and capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or to other preferred persons. *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 22 (2013). However, the U.S. Court of Appeals for the Federal Circuit has defined it more broadly as an arbitrary and capricious exercise of authority that is contrary to the agency's mission. *Smolinski v. Merit Systems Protection Board*, 23 F.4th 1345, 1351-52 (Fed. Cir. 2022). Here, the appellant's allegations effectively assert that she disclosed to the EMS Chief that his decisions to improperly promote two coworkers and hire a person less qualified than she lacked a justifiable basis and resulted in the gain or advantage of the coworkers and the selectee, respectively. We conclude that, if true, a person in the appellant's positon could reasonably conclude that such conduct evidences an abuse of authority under either of these definitions.[4] Thus, she has met the nonfrivolous allegation standard. *See* 5 C.F.R. § 1201.4(s) (defining a

---

[4] We acknowledge that, in the initial decision, the administrative judge found that the appellant failed to establish by preponderant evidence that she had a reasonable belief that the selection process for the GS-12 position was improper, ID at 4-7, and that this is the primary issue raised in the appellant's petition for review, PFR File, Tab 1. We make no findings regarding the appellant's specific argument on review concerning this claim because the administrative judge's findings on this matter are incomplete and, in any event, we are vacating the initial decision. *See Thomas v. Department of the Army*, 2022 MSPB 35, ¶ 8 (stating that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests). On remand, if appropriate, the administrative judge should consider the appellant's claims that she was told by a member of the interview panel that the selecting official improperly awarded veterans' preference points to the selectee. W-1 AF, Tab 10 at 106. Notably, the selecting official admitted that he awarded veterans' preference points to the selectee, HR (testimony of the EMS Chief), and the agency appears to have admitted during the discovery process below that no veterans' preference points should have been awarded in this selection, W-1, Tab 15 at 18. The administrative judge should also address in his remand initial decision the appellant's arguments on review regarding this alleged disclosure.

nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue).

In considering the appellant's claim regarding her EEO complaint, the administrative judge found that the appellant failed to nonfrivolously allege that she reasonably believed the Assistant Director exercised undue influence over the investigation into her April 2017 EEO complaint. W-1 AF, Tab 10 at 114, Tab 16. In doing so, the administrative judge mischaracterized the nature of the appellant's claimed disclosures. In the EEO process, the appellant alleged, as relevant here, that her nonselection was in reprisal for disclosing her coworkers' overtime fraud and their improper promotions, as well as the manipulated selection process for the GS-12 position. W-1 AF, Tab 10 at 15, 32-33. The administrative judge did not consider whether the appellant's EEO complaint constituted a protected activity under 5 U.S.C. § 2302(b)(9). We find that it did.

The Board recently reaffirmed the longstanding principle that disclosures made in an EEO complaint are not protected under 5 U.S.C. § 2302(b)(8). *See Edwards*, 2022 MSPB 9, ¶¶ 10, 22-23; *Williams v. Department of Defense*, 46 M.S.P.R. 549, 554 (1991). However, the Board has jurisdiction over complaints seeking to remedy whistleblower reprisal under 5 U.S.C. § 2302(b)(9)(A)(i). *Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶¶ 3, 15. As noted above, the appellant's EEO complaint was not limited to claims of discrimination; she also sought to remedy retaliation for alleged disclosures of wrongdoing under 5 U.S.C. § 2302(b)(8). Moreover, according to the appellant, she was told that these claims could not be investigated further in that venue because they were not related to discrimination. W-1 AF, Tab 10 at 33. We find that the appellant nonfrivolously alleged that she filed the EEO complaint to remedy whistleblower reprisal, which is an activity falling squarely within the Board's jurisdiction under 5 U.S.C. § 2302(b)(9)(A)(i). *See Bishop*, 2022 MSPB 28, ¶¶ 15-16 (concluding that an administrative judge erred in finding an appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) when he filed an EEO

complaint that did not seek to remedy whistleblower reprisal). As such, we find that the appellant nonfrivolously alleged that she engaged in protected activity under section 2302(b)(9)(A)(i) with respect to her EEO complaint.

Lastly, we turn to the appellant's OAWP complaint. Prior to December 12, 2017, the whistleblower protection statutory scheme provided that "cooperating with or disclosing information to the Inspector General of an agency, or [OSC], in accordance with applicable provisions of law," is protected. 5 U.S.C. § 2302(b)(9)(C). *Edwards*, 2022 MSPB 9, ¶ 29. Section 1097(c)(1) of the National Defense Authorization Act for Fiscal Year 2018 (2018 NDAA), Pub. L. No. 115-91, 131 Stat. 1283, 1618 (2017), amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or OSC, a disclosure to "any other [agency] component responsible for internal investigation or review" is also protected. *Edwards*, 2022 MSPB 9, ¶ 29. The Board has held that this statutory amendment is not retroactive when all of the relevant events occurred prior to the 2018 NDAA's enactment. *Edwards*, 2022 MSPB 9, ¶¶ 30-33. However, in similar circumstances, the Board found that the burden-shifting scheme set forth in 5 U.S.C. § 1221(e) applied to the appellant's claim that her removal was retaliation for protected activity under 5 U.S.C. § 2302(b)(9)(C) when the activity occurred prior to the effective date of the Whistleblower Protection Enhancement Act of 2012, which made such activity appealable to the Board, but her removal occurred after the effective date. *See Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 49-51.

OAWP is charged with, among other tasks, receiving whistleblowing disclosures, referring them to other agency components for review, and ensuring any recommendations that result from such investigations are implemented. 38 U.S.C. § 323(c)(1)(C)-(D), (F). It is also required to investigate claims of reprisal for whistleblowing. 38 U.S.C. § 343(c)(1)(H)(iii). Thus, we find that it is an agency component "responsible for internal investigation and review." 5 U.S.C. § 2302(b)(9)(C). The appellant contacted OAWP less than a month

prior to the enactment of the 2018 NDAA. Therefore, applying the reasoning in *Pridgen*, 2022 MSPB 31, ¶¶ 49-51, we find that the Board has jurisdiction over personnel actions that the appellant nonfrivolously alleged occurred after the 2018 NDAA's December 12, 2017 enactment.

In any event, the appellant's exercise of her right to file a complaint with OAWP in which she alleged she was subjected to a hostile work environment in reprisal for protected disclosures is a nonfrivolous allegation of protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) over which the Board has jurisdiction in this IRA appeal. W-1 AF, Tab 10 at 32; *see Bishop*, 2022 MSPB 28, ¶¶ 13, 15. Thus, we find that the appellant nonfrivolously alleged that her OAWP complaint constitutes protected activity.

<u>The appellant nonfrivolously alleged that the agency took four personnel actions against her.</u>

As set forth above, the appellant alleged that the agency did not select her for the GS-12 position, temporarily relocated her to a different duty location, suspended her for 7 days, and subjected her to a hostile work environment. W-1 AF, Tab 10 at 6-11. The agency's failure to select the appellant to the GS-12 position qualifies as a personnel action under 5 U.S.C. § 2302(a)(1)(A)(ii). Additionally, a suspension is a disciplinary action qualifying as a personnel action under 5 U.S.C. § 2302(a)(1)(A)(iii). Our discussion of whether the appellant nonfrivolously alleged further personnel actions focuses on the appellant's claim of a hostile work environment. As discussed below, we analyze her temporary relocation as part of this alleged hostile work environment.

Regarding the appellant's claim of a hostile work environment, the Board has explained that such a claim may amount to a covered personnel action when it constitutes a significant change in duties, responsibilities, or working conditions pursuant to 5 U.S.C. § 2302(a)(2)(A)(xii). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. To qualify as a personnel action under that section, the agency actions must have practical and significant effects on the overall

nature and quality of an employee's working conditions, duties, or responsibilities. *Id*.

Here, the appellant appears to allege two separate instances of a hostile work environment. Specifically, she alleges that, in 2014, a lower-graded coworker with whom she was previously friends began performing the appellant's duties, demanding she attend certain meetings, and generally treating her condescendingly. W-1 AF, Tab 10 at 5, 32-33. The appellant asserted that her supervisor, the EMS Chief, was aware of this behavior and permitted it. *Id*. at 32-33. The appellant further alleged that the same coworker threatened the appellant, causing the appellant to attempt to file a police report against her. *Id*. at 5. Additionally, the appellant asserted that sometime in 2014, the EMS Chief "downgraded" her duties and required her to "push heavy linen carts," a duty generally assigned to a lower-level employee. *Id*. at 32. She also asserted that the EMS Chief "held [her] against [her] will" one time when she tried to leave his office. *Id*. at 104.

On their face, these allegations relate to specific duties the appellant was required to perform and purport to establish a work environment that was threatening and hostile. As such, the appellant has nonfrivolously alleged that, collectively, these instances had a significant impact on the overall nature of her duties, responsibilities, and working conditions. Accordingly, we find that the appellant nonfrivolously alleged that the agency took a personnel action against her in 2014 under 5 U.S.C. § 2302(a)(2)(A)(xii). *See Skarada*, 2022 MSPB 17, ¶¶ 16-18; *see generally Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003) (suggesting that a number of minor agency actions relating to the appellant's working conditions may amount to a covered personnel action under section 2302(a)(2)(A)(xii) collectively, even if they are not covered personnel actions individually).

The appellant also alleged that the agency again subjected her to a hostile work environment several years later between 2017 and 2019. Specifically, she

alleged that a coworker, who was also employee A's girlfriend, cursed at her, slammed doors around her, made "spitting noises" at her, and imposed on her personal space. W-1 AF, Tab 10 at 7-8, 72-73, 80, 108, Tab 20 at 82. She further alleged that, during this time period, the agency ignored her complaints of a prior hostile work environment and sexual harassment and that it conducted a deficient EEO investigation into her claims. *Id*. at 7-8, 73, 104. Additionally, she alleged that the agency began an investigation into her behavior toward employee A in February 2019, and temporarily relocated her from February to July 2019 pending the results of that investigation. *Id*. at 8, 61, 114-15.

Regarding the agency's investigation into the appellant's alleged misconduct, it is well settled that an investigation is not a personnel action per se. *See Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 10 (citations omitted). However, such an investigation may, in combination with other agency actions, constitute a significant change in duties, responsibilities, and working conditions. *See id*., ¶¶ 10-13. Here, as set forth above, the appellant alleged that, as a part of the investigation, she was temporarily transferred[5] to a different duty location, which resulted in her "working out of breakrooms, waiting rooms, and/or using a subordinates' assigned desk," whereas prior to the transfer, she had her own "single-person office." W-1 AF, Tab 10 at 8. We find that the appellant's allegation of a change in work space, work location, and work amenities amounts

---

[5] We have considered whether the appellant's alleged temporary relocation constitutes a "transfer" or "reassignment," which are personnel actions under 5 U.S.C. § 2302(a)(2)(A)(iv). However, transfers and reassignments involve a change of position either within the agency or to another agency. 5 C.F.R. § 210.102(b)(10), (12), (18); *see Onasch v. Department of Transportation*, 63 M.S.P.R. 158, 162-63 (1994) (applying the definitions at 5 C.F.R. § 210.102(b) to determine whether an appellant suffered a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iv)). The appellant was relocated from the agency's Fort McPherson campus to its Arcadia clinic, both of which are located in Atlanta, Georgia. W-1 AF, Tab 10 at 8. She has not alleged any accompanying change in duties and indicates that she received no official notification of her relocation. *Id.* The Board has concluded that a change in duty site alone does not constitute a personnel action. *Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388-89 (1997) (declining to find that being moved from within to outside naval base, without more, was a significant change in duties, responsibilities, or working conditions).

to a nonfrivolous allegation of a significant change in working conditions under section 2302(a)(2)(A)(xii).

Regarding the remaining allegations generally relating to a hostile work environment claim, such as her coworker's physical treatment of her, the agency's failure to investigate her complaints of a prior hostile work environment and sexual harassment, and its deficient EEO investigation into her claims, W-1 AF, Tab 10 at 7-8, 73, 104, such actions could have an impact on the appellant's ability to feel safe and heard in her work space. Therefore, taking these actions collectively, we find that the appellant has nonfrivolously alleged that the actions had practical and significant effect on the overall nature and quality of her working conditions, and thus, has nonfrivolously alleged that she experienced a significant change in duties, responsibilities, and working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii). *See Skarada*, 2022 MSPB 17, ¶¶ 16, 18.

Accordingly, we find that the appellant nonfrivolously alleged that the totality of the agency's actions between 2017 and 2019, as set forth above, constitutes a personnel action under section 2302(a)(2)(A)(xii).

<u>The appellant has nonfrivolously alleged that her protected disclosures and protected activities were contributing factors in the agency's decision to take the above discussed personnel actions against her.</u>

As set forth above, to establish the Board's jurisdiction over her claims, the appellant must nonfrivolously allege that a protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards,* 2022 MSPB 9, ¶ 8; *Salerno,* 123 M.S.P.R. 230, ¶ 5. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the

disclosure or activity was a contributing factor in the personnel action. *Salerno*, 123 M.S.P.R. 230, ¶ 13.

We address each alleged personnel action below in chronological order to determine whether the appellant nonfrivolously alleged that her protected disclosures or activities were contributing factors in the personnel actions.

*The alleged 2014 significant change in duties, responsibilities, and working conditions*

As discussed above, the appellant has nonfrivolously alleged that the agency subjected her to a significant change in duties, responsibilities, or working conditions in 2014 and that the EMS Chief permitted in some instances, and was responsible in other instances, for the incidents underlying that environment. W-1 AF, Tab 10 at 5, 32-33, 104. Regarding the appellant's disclosure concerning the overtime theft and abuse, the appellant alleged that she made this disclosure in the late summer or early fall of 2014, and that she made the disclosure to the EMS Chief. *Id*. at 32. Regarding her disclosure concerning the improper promotions, the appellant alleged that she raised this issue with the EMS Chief in the fall or winter of 2014. *Id*. at 6, 32-33. Because the appellant has alleged that both disclosures occurred within the same year as the onset of the significant change in duties, responsibilities, and working conditions, and that one of the agency officials responsible for that action had knowledge of both of the disclosures, we find that the appellant's allegations meet both prongs of the knowledge/timing test. Accordingly, we find that the appellant nonfrivolously alleged that these disclosures were contributing factors in the alleged significant change in duties, responsibilities, and working conditions in 2014. *See Salerno*, 123 M.S.P.R. 230, ¶ 13.

Regarding the appellant's 2017 disclosure regarding the improper selection process, her 2017 EEO complaint, and her 2017 OAWP complaint, these disclosures and activities occurred after the alleged 2014 hostile work environment, and therefore, could not have been contributing factors in this

action. *See Orr v. Department of the Treasury*, 83 M.S.P.R. 117, ¶ 15 (1999) (concluding that whistleblowing that occurred after the agency took alleged personnel actions could not have been a contributing factor in those actions), *aff'd per curiam*, 232 F.3d 912 (Fed. Cir. 2000). Accordingly, we find that the appellant failed to nonfrivolously allege that her disclosure regarding the improper selection process and her EEO and OAWP complaints were contributing factors in the 2014 change in duties, responsibilities, and working conditions.

*The alleged nonselection*

As set forth above, the appellant alleged that she was not selected for the GS-12 position in reprisal for her 2017 EEO and OAWP complaints. W-1 AF, Tab 10 at 4-5, 106. Although not entirely clear, she may also be seeking to allege that the nonselection was in retaliation for her later disclosure to the EMS Chief that his decision was the result of preselection. It appears undisputed that the nonselection occurred in March of 2017. *Id*. at 14. The appellant's disclosure to the EMS Chief regarding the propriety of the nonselection, the filing of her EEO complaint in April of 2017, and the filing of her OAWP complaint in November of 2017, occurred after this alleged personnel action. *Id*. at 4; HR (testimony of the appellant). As such, none could have been a contributing factor in this action. *Orr*, 83 M.S.P.R. 117, ¶ 15. Accordingly, we find that the appellant failed to make a nonfrivolous allegation that her 2017 disclosures and activities were contributing factors in her nonselection.

The appellant's disclosures regarding the overtime fraud and abuse and improper promotions occurred in 2014, prior to the appellant's 2017 nonselection. The Board has held that personnel actions taken within 1 to 2 years of the protected disclosure or activity satisfy the timing prong of the knowledge/timing test, but those that take place more than 2 years after the disclosure or activity are too remote to satisfy this test. *See Pridgen*, 2022 MSPB 31, ¶ 63 (applying the knowledge/timing test at the merits stage of an appeal). Here, the appellant made her 2014 disclosures approximately 3 years before the nonselection occurred in

2017. Thus, her allegations fail the timing prong of the knowledge/timing test.[6] Accordingly, we find that the appellant failed to make a nonfrivolous allegation that these disclosures were contributing factors in her nonselection under the knowledge/timing test.

Nonetheless, the knowledge/timing test is not the only way for an appellant to satisfy the contributing factor criterion. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). If the Board determines that an appellant has failed to satisfy the knowledge/timing test, it will consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at agency officials involved in the alleged personnel action, and whether those individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

In this case, the appellant's 2014 disclosure concerning improper promotion directly implicated the EMS Chief, and the EMS Chief would therefore have had some motive to retaliate. *See Brousseau v. Department of Agriculture*, 97 M.S.P.R. 637, ¶ 53 (2003). Furthermore, although the agency put forth a cogent explanation for why it did not select the appellant for promotion, ID at 5-6, appointments and promotions by their very nature involve some measure of discretion, and the agency's reasons for selecting another individual over the appellant are certainly debatable. This is especially so considering the discrepancy regarding veterans' preference points noted above. *Supra*, ¶ 18 n.4. Based on these considerations, we find that the appellant has made a nonfrivolous allegation that her 2014 disclosure concerning the improper promotion of two coworkers was a contributing factor in her 2017 nonselection for promotion. *See Powers v. Department of the Navy*, 69 M.S.P.R. 150, 156 (1995) (holding that any weight given to a whistleblowing disclosure, either alone or in combination with other factors, can satisfy the contributing factor standard). As for the 2014

---

[6] Despite not meeting the timing prong, the appellant has alleged that she made these disclosures to the EMS Chief and that he was responsible for the nonselection. As such, she does meet the knowledge prong of the test.

disclosure concerning overtime fraud and abuse, this is a closer call because this disclosure did not directly implicate the EMS chief or any other official involved in the 2017 selection process. However, this pro se appellant's theory of the case appears to be that the EMS Chief favored the two employees whom the appellant accused of overtime fraud and abuse and, considering the low standard for making a nonfrivolous allegation, we find it appropriate to resolve this threshold issue in the appellant's favor. *See Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 10 (2010) (holding that any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction). For these reasons, we find that the appellant has made a nonfrivolous allegation that her 2014 disclosures regarding the overtime fraud and abuse and the improper promotions were contributing factors in her 2017 nonselection.

*The 2017-2019 significant change in duties, responsibilities, and working conditions*

The appellant asserted that her coworker, who was also employee A's girlfriend, was responsible for some of the significant changes in the appellant's duties, responsibilities, and working conditions between 2017 and 2019. W-1 AF, Tab 10 at 5. She further suggested that the EMS Chief bore part of the responsibility for failing to investigate her complaints of a hostile work environment and sexual harassment, and selecting the investigator who looked into allegations that the appellant sent employee A inappropriate texts from her work phone, which in turn led to the appellant's temporary relocation. *Id.* at 73, 83, Tab 20 at 19.

Beginning with the appellant's disclosure to the EMS Chief that he inappropriately manipulated the selection process and preselected the selectee for the GS-12 position, we find that the appellant's allegations meet the knowledge/timing test with respect to this personnel action. Specifically, the alleged disclosure occurred in the weeks after the March 2017 nonselection, and

the alleged personnel action spans from 2017-2019, thereby meeting the timing prong. Further, as previously noted, the appellant has alleged that she made this disclosure directly to the EMS Chief, and she has alleged that he played a role in the significant change in duties, responsibilities, and working conditions, thereby meeting the knowledge prong. Accordingly, we find that the appellant nonfrivolously alleged that her 2017 disclosure regarding the manipulation of the selection process for the GS-12 position was a contributing factor in this personnel action. *See Salerno*, 123 M.S.P.R. 230, ¶¶ 13-14.

Regarding the appellant's 2014 disclosures concerning the overtime fraud and abuse and improper promotions, although the appellant has met the knowledge prong of the knowledge/timing test by alleging that she made these disclosures directly to the EMS Chief, she has failed to meet the timing prong of the test because the 2014 disclosures occurred at least 3 years prior to the alleged significant change in duties, responsibilities, and working conditions. *Pridgen,* 2022 MSPB 31, ¶ 63. Thus, the appellant has failed to nonfrivolously allege that these disclosures were contributing factors in the personnel action under the knowledge/timing test. Nonetheless, as explained above, she may still meet the nonfrivolous allegation standard for the contributing factor element in other ways. *See Dorney*, 117 M.S.P.R. 480, ¶ 15. Although the EMS Chief's handling of the competing harassment allegations appears to be reasonable on its face, as explained above, the EMS Chief likely had some motive to retaliate for both of the appellant's 2014 disclosures. *Supra*, ¶ 39. Considering the totality of the circumstnaces, we find that the appellant has made a nonfrivolous allegation that both of these disclosures were a contributing factor in the significant change in duties, responsibilities and working conditions that she experienced between 2017 and 2019.

Regarding the appellant's alleged protected activities, the appellant has alleged that she filed her EEO complaint in April of 2017 and her OAWP complaint in November of 2017. Because the change in duties, responsibilities,

and working conditions continued on for another year and a half to 2 years, we find that the appellant's allegations meet the timing prong of the knowledge/timing test with respect to these two activities. *Pridgen*, 2022 MSPB 31, ¶ 63. Regarding the EEO complaint, the record appears to suggest that the EMS Chief had knowledge of the complaint, W-1 AF, Tab 15 at 9, 26, and we resolve any ambiguity as to whether the appellant made nonfrivolous allegations in favor of finding jurisdiction, *Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011). Thus, we find that the appellant's allegations meet the knowledge/timing test with respect to her EEO complaint. *See Salerno*, 123 M.S.P.R. 230, ¶¶ 13-14.

After our thorough review of the record, the appellant does not appear to have specifically alleged that the EMS Chief was aware of the OAWP complaint during the time period relevant to this personnel action. Accordingly, the appellant has failed to nonfrivolously allege the knowledge prong of the knowledge/timing test. *See Pridgen*, 2022 MSPB 31, ¶¶ 12, 61, 63-65 (agreeing with an administrative judge's determination that an appellant failed to satisfy the knowledge/timing test when she did not prove that the agency officials who proposed and instituted her removal had knowledge of her protected activity of filing an OSC complaint). Nevertheless, considering that the content of the OAWP complaint concerned the same alleged overtime fraud and abuse that the appellant reported to the EMS Chief in 2014, and that the EMS Chief may have had some motive to retaliate for that disclosure, we find that the appellant has made a nonfrivolous allegation under *Dorney* and *Powers* that the OAWP complaint was a contributing factor in the significant change in duties, responsibilities, and working conditions.

*The appellant's 7-day suspension*

The appellant has alleged that the EMS Chief proposed her 7-day suspension on July 15, 2019, and that the Assistant Director issued a decision sustaining the 7-day suspension on July 30, 2019. W-1 AF, Tab 20 at 11-17.

Regarding the 2014 disclosures concerning the overtime fraud and abuse and the improper promotions, the 2017 disclosure regarding the alleged manipulation of the selection process for the GS-12 position, and the appellant's April 2017 EEO complaint, these alleged protected disclosures and this alleged protected activity occurred more than 2 years prior to the issuance of the notice of proposed suspension. As such, the appellant's allegations do not meet the timing prong of the knowledge/timing test. *Pridgen*, 2022 MSPB 31, ¶ 63. Regarding the appellant's November 2017 OAWP complaint, although that complaint was filed within 2 years of the 7-day suspension, thereby meeting the timing prong of the knowledge/timing test, the appellant does not appear to have alleged that either the proposing official, here the EMS Chief, or the deciding official, here the Assistant Director, had knowledge of the OAWP complaint. As such, the appellant has similarly failed to nonfrivolously allege the knowledge prong of the knowledge/timing test. *See id*. Nevertheless, we observe that the 7-day suspension was based on information uncovered during the investigation that comprised part of the appellant's hostile work environment claim. W1-AF, Tab 20 at 16. Therefore, our findings on the contributing factor issue in connection with the hostile work environment claim, *supra* ¶¶ 43-44, can fairly be imputed to the 7-day suspension, *see Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (finding the contributing factor element satisfied for each personnel action that was part of a continuum of related personnel actions).

This complex IRA appeal involves multiple disclosures and multiple personnel actions. To assist and guide the administrative judge in adjudicating the appeal on remand, we provide the following summary. The appellant has made nonfrivolous allegations that she made protected disclosures and engaged in protected activity as follows: (1) a 2014 disclosure to the EMS Chief concerning overtime fraud and abuse by two coworkers, (2) a 2014 disclosure to the EMS Chief concerning the improper promotion of the same two coworkers, (3) a 2017 disclosure to the EMS Chief concerning his alleged manipulation of a promotion

selection process, (4) an April 2017 EEO complaint concerning the same matters as the first three disclosures, and (5) a November 2017 OAWP complaint concerning the alleged overtime fraud and abuse. The appellant also made nonfrivolous allegations that these alleged protected disclosures and activities were contributing factors in multiple personnel actions as follows: First, the appellant made a nonfrivolous allegation that disclosures (1) and (2) were contributing factors in a significant changed in duties, responsibilities, and working conditions in 2014. Second, the appellant made a nonfrivolous allegation that disclosures (1) and (2) were contributing factors in a nonselection for promotion on or about March 20, 2017. Third, the appellant made a nonfrivolous allegation that all five disclosures and activities were contributing factors in a significant change in duties, responsibilities, and working conditions between 2017 and 2019. Fourth, the appellant made a nonfrivolous allegation that all five disclosures and activities were contributing factors in a 7-day suspension, beginning August 12, 2019. The appellant exhausted all four of these claims before OSC.

After further development of the record as appropriate, and after affording the appellant an opportunity for a supplemental hearing, the administrative judge shall determine whether the appellant has proven her four claims by a preponderance of the evidence. In particular, the administrative judge shall determine whether the appellant has proven by preponderant evidence that her claimed disclosures and activities were, in fact, protected under the WPA, her two hostile work environment claims amounted to a significant change in duties, responsibilities and working conditions under *Skarada*, 2022 MSPB 17, and her protected activities were contributing factors in the personnel actions as set forth above. If the appellant proves any of her claims, the agency will have the opportunity to show by clear and convincing evidence that it would have taken the same personnel actions notwithstanding the appellant's protected disclosures and activities.

**ORDER**

For the reasons discussed above, we remand this case to the regional office for further adjudication on the merits in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.