# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DERRICK JONES,
   Appellant,

  v.

DEPARTMENT OF THE NAVY,
   Agency.

DOCKET NUMBER
DC-1221-23-0074-W-1

DATE: July 29, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Derrick Johnell Jones, Portsmouth, Virginia, pro se.

Trudy V. Murphy, Norfolk, Virginia, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1  The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant is an Air Conditioning Equipment Mechanic with the Naval Facilities Engineering Systems Command (NAVFAC) Mid-Atlantic in Norfolk, Virginia. Initial Appeal File (IAF), Tab 1 at 1, 6. According to the appellant, he sent an email to a staff member in NAVFAC's Human Resources Office (HRO) on March 26, 2021, which led to an agency investigation. *Id.* at 34. The appellant alleged to the individual assigned to investigate his concerns that his first-level supervisor accessed an agency account assigned to the appellant. Petition for Review (PFR) File, Tab 1 at 8. The appellant further alleged to the investigator that his first-level supervisor used that access to complete a certification on the appellant's behalf, falsely indicating that the appellant had completed "Operational Security for Control Systems" training. *Id.*; IAF, Tab 1 at 51 n.1. The appellant also asserted that his first-level supervisor was embarrassed during an unrelated incident when, during a meeting with the appellant and his first- and second-level supervisors on October 25, 2021, it was revealed that his first-level supervisor had made a false statement regarding the appellant's work schedule.[2] IAF, Tab 1 at 40, 42, 51.

¶3      On January 5, 2022, the appellant filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC), alleging that, between April and October 2021, the agency took multiple personnel actions against him in retaliation for his March 26, 2021 email and the embarrassment his first-level supervisor suffered on October 25, 2021. *Id.* at 4, 28-43. According to the appellant, between September and December 2021, he also reported some of his

_____

[2] The appellant does not specifically explain the supervisory role of the individual we have identified here as his second-level supervisor. We have so identified this individual for the clarity and readability of this decision but recognize that he may be higher in the appellant's chain of command. IAF, Tab 1 at 40, 51.

concerns about agency wrongdoing to a U.S. Representative, the agency's equal employment opportunity (EEO) office, and the U.S. Department of Labor (DOL). *Id.* at 32. He also disclosed to OSC his belief that the agency had committed other prohibited personnel practices by violating regulations implementing the Family and Medical Leave Act of 1993 (FMLA) and had endangered his life by failing to adequately address an infectious disease outbreak. *Id.* at 16-25, 44-47.

¶4    On September 8, 2022, OSC issued a letter notifying the appellant that it had closed its investigation into his claims and that he could file an appeal with the Board. *Id.* at 51-52. The appellant filed the instant appeal. *Id.* at 4.

¶5    The administrative judge notified the appellant of his jurisdictional burden and twice ordered him to file evidence and argument on the jurisdictional issue. IAF, Tabs 5, 11. The appellant did not respond to the first order. In response to the second order, he stated that all information needed to establish jurisdiction could be found in his initial appeal. IAF, Tab 12 at 4. The agency argued that the appellant failed to meet his jurisdictional burden, and the administrative judge should therefore dismiss the appeal. IAF, Tabs 9, 13.

¶6    The administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 14, Initial Decision (ID) at 1-2, 7. She generally found that the appellant had exhausted his OSC remedy, but did not specifically identify the alleged protected activity, disclosures, or personnel actions that he raised with OSC. ID at 4-5. Despite her exhaustion finding, the administrative judge concluded that the appellant failed to establish jurisdiction because he did not make a nonfrivolous allegation that he engaged in a protected activity under 5 U.S.C. § 2302(b)(9)(A)(i). ID at 5-7.

¶7    The appellant has filed a petition for review. PFR File, Tab 1. The agency has filed a response, and the appellant has replied. PFR File, Tabs 3-4. For the following reasons, we find that the appellant established jurisdiction over his IRA appeal and remand this appeal to the regional office for adjudication on the merits.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8        The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 11. Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6.

The appellant proved by preponderant evidence that he exhausted with OSC his March 26, 2021 HRO email and disclosures during the following investigation, and the October 25, 2021 meeting.

¶9        An employee seeking corrective action for whistleblower reprisal is required to seek corrective action from OSC before seeking corrective action from the Board. 5 U.S.C. § 1214(a)(3); *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 5. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Chambers*, 2022 MSPB 8, ¶ 10. The Board's jurisdiction is limited to those issues that have been previously raised with OSC. *Id.* An appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC. *Id.* An appellant may demonstrate exhaustion through his initial OSC complaint or correspondence with OSC. *Id.*, ¶ 11. In the alternative, exhaustion may be proven through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in his Board appeal. *Id.* The appellant must prove exhaustion with OSC by preponderant evidence, not just present nonfrivolous allegations of exhaustion. *Id.* (citing 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1201.57(c)(1)).

¶10 Below, the administrative judge generally found that the appellant had shown by preponderant evidence that he exhausted his claims with OSC because he had submitted his OSC closure letter and his OSC whistleblower reprisal complaint.[3] ID at 4-5. She proceeded to identify the activity at issue as the March 26, 2021 HRO email, a complaint to a U.S. Representative, and EEO and DOL complaints. ID at 5-7. The parties do not dispute her exhaustion findings on review. Nonetheless, we review these matters to clarify the scope of the issues on remand.

> *The appellant exhausted his March 26, 2021 HRO email and subsequent disclosures, and an October 25, 2021 meeting with his supervisors.*

¶11 We agree that the appellant raised with OSC his March 26, 2021 HRO email and, more generally, his disclosures during the resulting agency investigation. The appellant provided a copy of his OSC complaint with his initial appeal. IAF, Tab 1 at 16-50. His complaint references his HRO email and the investigation into that email. *Id.* at 34. He further alleged to OSC that his first-level supervisor later retaliated against him for the embarrassment caused by his initial email and information discovered during the resulting investigation. *Id.* at 37.

¶12 Although not identified by the administrative judge, we observe that the appellant also alleged retaliation for an October 25, 2021 incident in his OSC complaint. Specifically, he alleged that his first-level supervisor retaliated against him for information that came to light during the October 25, 2021

---

[3] Below, the appellant also submitted an October 26, 2022 notice of proposed removal that postdates his September 8, 2022 closure letter from OSC by more than a month. IAF, Tab 1 at 6-12, 51-52. We clarify that, because this action postdates OSC's closure letter and was not raised to OSC, the Board does not have jurisdiction over it in this IRA appeal. *See Chambers*, 2022 MSPB 8, ¶ 10. However, the appellant filed a separate chapter 75 appeal challenging his removal and raising a claim that it was taken in reprisal for the instant appeal and underlying OSC complaint. *Jones v. Department of the Navy*, MSPB Docket No. DC-0752-23-0252-I-1, Initial Appeal File (0252 IAF), Tab 1 at 3, 5, Tab 15 at 6-7, Tab 20 at 4, 8-9. On January 19, 2024, the administrative judge assigned to the matter dismissed the appeal as moot. 0252 IAF, Tab 40, Initial Decision at 16.

meeting between the appellant and his first- and second-level supervisors. *Id.* at 40-42. Therefore, we find that he raised this October 25, 2021 incident with OSC.

> *Although the appellant exhausted other claims with OSC, he did not allege whistleblower reprisal.*

¶13 To the extent that the administrative judge found that the appellant exhausted his EEO, DOL, and congressional complaints, we disagree. In his OSC complaint, he alleged that he reported to a U.S. Representative, DOL, and the agency's EEO office the same concerns that he reported to HRO. *Id.* at 32; ID at 6-7. Although not identified by the administrative judge, the appellant also made a disclosure to OSC of what he believed were the agency's November 2021 violations of FMLA as it concerned his leave usage. IAF, Tab 1 at 16-25, 44-47. In addition, although not mentioned by the administrative judge, we observe that the appellant alleged that his fourth-level supervisor "endangered [the appellant's] life by refusing to adequately address an infectious disease outbreak" in September 2021. *Id.* at 47.

¶14 Nonetheless, we lack jurisdiction over these matters in this IRA appeal. The Board's jurisdiction to review IRA complaints based on personnel actions over which it otherwise does not have appellate jurisdiction, as here, is limited to adjudicating allegations of reprisal for certain protected disclosures and activities. *See* 5 U.S.C. §§ 1221(a), 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), (b)(9)(D); *Marren v. Department of Justice*, 51 M.S.P.R. 632, 638-39 (1991), *aff'd per curiam*, 980 F.2d 745 (Fed. Cir. 1992) (Table), *and modified on other grounds by Robinson v. U.S. Postal Service*, 63 M.S.P.R. 307 (1994). The record contains no evidence that the appellant alleged reprisal for his EEO, DOL, or congressional complaints to OSC, or his disclosures to OSC that the agency violated the FMLA or endangered his life. IAF, Tab 1 at 16-52. Nor has he claimed reprisal in connection with these matters either below or on review. IAF, Tab 1 at 3, Tab 4;

PFR File, Tabs 1, 4. Therefore, they do not fall within the scope of the Board's IRA jurisdiction, and we do not consider them further.

<u>The appellant has made a nonfrivolous allegation that he made a protected disclosure.</u>

¶15    We turn next to whether the appellant nonfrivolously alleged that his email to HRO and meeting with his supervisors were protected disclosures under 5 U.S.C. § 2302(b)(8), or protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). *See McCray*, 2023 MSPB 10, ¶ 11. A nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *see* 5 C.F.R. § 1201.4(s) (defining a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue).

¶16    As to the March 26, 2021 HRO email, the administrative judge found that the appellant failed to nonfrivolously allege that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) because he did not allege that the email sought to remedy whistleblower reprisal. ID at 6. We agree that the record was lacking.

¶17    Only appeals, complaints, and grievances seeking to remedy whistleblower reprisal are covered under section 2302(b)(9)(A)(i). *Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶ 15. Filing a complaint in which an appellant did not seek to remedy whistleblower reprisal is outside the scope of section 2302(b)(9)(A)(i), even if the complaint disclosed wrongdoing under section 2302(b)(8). *Id.*, ¶¶ 15-16. There is no copy of the March 26, 2021 email in the record. The only descriptions of what it stated are in the appellant's OSC complaint and OSC's letter closing its investigation. IAF, Tab 1 at 35, 51 n.1. The appellant described the investigation into his email as uncovering that his supervisor's stated reason for completing the appellant's training "was an embarrassing lie." *Id.* at 35. OSC's letter describes the appellant's email as alleging that his "first-line supervisor falsified information related to a new training requirement,

wrongful[ly] deni[ed] [the appellant's] selection as a Purebred Agent, and [engaged in] unlawful conduct related to [his] use of a charging station for [his] vehicle." *Id.* at 51 n.1. Neither below nor on review does the appellant claim that his email to HRO sought to remedy reprisal for whistleblowing.

¶18     Nonetheless, we find that the appellant's allegations on review are sufficient to conclude that he made disclosures protected under 5 U.S.C. § 2302(b)(8) to the investigator assigned to his HRO email. For the first time on review, the appellant provides a copy of an April 6, 2021 email he sent to the investigator. PFR File, Tab 1 at 8; IAF, Tab 1 at 34. This document provides new information regarding the appellant's alleged disclosures that the administrative judge did not have available below. Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence or argument submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed before the administrative judge despite the party's due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980). However, we have considered the appellant's new evidence to the extent it impacts the Board's jurisdiction, which is always before the Board and may be raised by the parties or sua sponte by the Board at any time. *Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 7 (2010).

¶19     A protected disclosure is one which the employee reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8); *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 14. The proper test for determining whether an employee had a reasonable belief that his disclosure was protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in section 2302(b)(8). *Cooper*, 2023 MSPB 24, ¶ 14.

¶20     In the April 6, 2021 email he provides on review, the appellant claimed that his first-line supervisor committed a "privacy and security" violation when he "access[ed]" the appellant's Total Workforce Management Services (TWMS)[4] account under the appellant's identity and falsely indicated that the appellant had "complete[d] training."[5]  PFR File, Tab 1 at 6, 8.  According to the appellant, the system showed that he completed the "Operational Security for Control Systems" training three times but that he "did not access or complete this training at all." *Id.* at 8.  He alleged to the investigator that he discovered his first-level supervisor's actions the week of March 15, 2021, and, when the appellant confronted his first-level supervisor the following week, his supervisor confirmed that he had completed the training because of an approaching deadline.  *Id.*

¶21     An employee need not identify "a statutory or regulatory provision by title or number to receive protection under the whistleblower protection laws, when the employee's statements and the circumstances surrounding the making of those statements clearly implicate an identifiable law, rule, or regulation."  *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).  Although the

---

[4] The agency's "Total Workforce Management Services (TWMS) provides employees access to trainings" and to view personnel information. https://www.secnav.navy.mil/rda/workforce/pages/nadp/employees/twms.aspx  (last visited July 29, 2024).  We take official notice of this information, which is not in the record, because it is publicly available.  *See* 5 C.F.R. § 1201.64 (providing that the Board may take official notice of matters of common knowledge or that can be verified).

[5] The appellant also indicated on review that the training at issue "plays . . . a vital role in [the agency's] ability to support the war fighter effectively and efficiently."  PFR File, Tab 1 at 6.  Because we find, as discussed below, that the appellant nonfrivolously alleged that he reasonably believed his TWMS disclosure evidenced a violation of law, we need not decide here whether he also nonfrivolously alleged that his disclosure evidenced a substantial and specific danger to public health or safety.  We also need not make findings here as to whether the appellant nonfrivolously alleged that he made additional protected statements in his April 6, 2021 email.  He may pursue any such claims on remand.  *See Skarada*, 2022 MSPB 17, ¶ 13 (holding that the Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure).

appellant did not identify the Privacy Act by name, the Privacy Act generally prohibits the disclosure to others of private information retrieved by an individual's name or other "identifying particular." 5 U.S.C. § 552a(a)(1), (4)-(5), (b). We find that the appellant has made nonfrivolous allegations that he reasonably believed that the agency maintained his records in the TWMS by his name or some other personal identifier and that his supervisor's unauthorized access of his TWMS information violated the Privacy Act. *See Herman v. Department of Justice*, 115 M.S.P.R. 386, ¶ 10 (2011) (determining that the appellant, who was not a lawyer, nonfrivolously alleged that he made a protected disclosure of a violation of the Privacy Act); *see also Hupka v. Department of Defense*, 74 M.S.P.R. 406, 410-11 (1997) (finding that the appellant's disclosures regarding alleged Privacy Act violations were protected). Therefore, we find that the Board has jurisdiction over the appellant's communications to the investigator looking into his email to HRO.

¶22 The appellant also claimed that his first-level supervisor retaliated against him for embarrassment he suffered at a meeting on October 25, 2021. IAF, Tab 1 at 40, 42, 51. However, the appellant did not claim that he made protected disclosures to the second-level supervisor at the meeting or that he otherwise engaged in protected activity within the scope of the Board's IRA jurisdiction. Instead, the appellant asserted that his first-level supervisor claimed the second-level supervisor made "an unauthorized decision concerning [the appellant's] work schedule" but, during the meeting between the three of them, the second-level supervisor proved that the statement the first-level supervisor made was not true. *Id.* at 42. Thus, interpreting the appellant's allegations in the light most favorable to the appellant, it was his second-level supervisor who made the alleged disclosure.

¶23 An appellant may establish IRA jurisdiction on the basis that he is closely associated with someone who made a disclosure protected under 5 U.S.C. § 2302(b)(8). *Mercer v. Department of Health and Human Services*, 82 M.S.P.R.

211, ¶ 9 (1999), *aff'd*, 4 F. App'x 888 (Fed. Cir. 2001); *Burrowes v. Department of the Interior*, 54 M.S.P.R. 547, 550-51 (1992). The non-disclosing employee is protected in such instances because a failure to protect an employee from retaliation based on his relationship with another employee who has engaged in whistleblowing would discourage other employees from making protected disclosures. *See Duda v. Department of Veterans Affairs*, 51 M.S.P.R. 444, 446-47 (1991). The appellant does not claim that he was a friend or relative of his second-level supervisor such that he would be discouraged from making protected disclosures based on his first-level supervisor's discomfort with his second-level supervisor's statements. *See id.* at 447 (analogizing to retaliation for Title VII activities engaged in by a friend or relative). Even if the appellant made such an allegation, however, we would still find that he did not meet the nonfrivolous allegation threshold because he does not indicate what the parties at the October 25, 2021 meeting discussed regarding his schedule or how any prior information he received was false. *See Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 6 (explaining that disclosures must be specific and detailed, not vague allegations of wrongdoing).

The appellant nonfrivolously alleged that the agency took at least one personnel action against him.

¶24     Because the administrative judge disposed of the appellant's claims on other grounds, she did not make any findings as to the alleged personnel actions. ID at 5-7. Therefore, we do so here. We find that the appellant exhausted with OSC his claims that, in reprisal for his disclosures during the investigation into his HRO email, his fourth-level supervisor prevented his collateral-duty assignment to Purebred Agent in April 2021, his second-level supervisor threatened to place him in an absent without leave (AWOL) status the same month, and his first-level supervisor did not allow him to record a meeting on May 4, 2021. IAF, Tab 1 at 36, 38-39, 43, 51.

¶25  The appellant also claimed below that his first-level supervisor threatened him with removal on October 26, 2021. *Id.* at 3, 40-42. The appellant also raised this claim to OSC. *Id.* at 40-42. However, he alleged to OSC only that this threatened removal was in reprisal for the October 25, 2021 meeting, over which we have found the Board lacks jurisdiction. *Id.* The appellant has not provided evidence or alleged that he also claimed to OSC that his threatened removal was in reprisal for his disclosures made in connection with his HRO email. *Id.* at 40-42. Therefore, he did not exhaust this claim and the Board lacks jurisdiction over the alleged October 26, 2021 threatened removal.

### Threatened AWOL in April 2021

¶26  The appellant alleged to OSC that his fourth-level supervisor attempted to force him to return to work in April 2021, before the end of his 14-day quarantine period due to an exposure to COVID-19. *Id.* at 38. According to the appellant, after he declined to return early, his second-level supervisor left him a voicemail threatening to mark the appellant as AWOL if he did not comply. *Id.* Within minutes, his second-level supervisor called him back and retracted his order that the appellant report to duty. *Id.*

¶27  An appellant may secure corrective action in an IRA appeal based on an agency's threat to take a personnel action. 5 U.S.C. §§ 1221(e)(1), 2302(b)(8), (b)(9); *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶¶ 9-10 (2015). Placing an employee in AWOL status is a decision concerning pay or benefits and is therefore a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix). *Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶ 14 (1999), *review dismissed*, 230 F.3d 1381 (Fed. Cir. 2000) (Table). Accordingly, we find that the appellant has nonfrivolously alleged that he was subjected to a personnel action when he was threatened with being deemed AWOL.

*Denial of appointment as Purebred Agent and meeting in April and May 2021*

¶28    The appellant alleged that the agency subjected him to a personnel action when it prevented his collateral-duty assignment to a Purebred Agent in April 2021. IAF, Tab 1 at 39. According to the appellant, a Purebred Agent is "certified and designated to install the security software and certificates on [employees'] federally issued iPhones." *Id.* He indicated that he was told that Purebred Agent was a "non-paid, lateral duty" that required a security clearance, which he did not otherwise need for his position as an Air Conditioning Equipment Mechanic. *Id.* The appellant asserted that his first- and second-level supervisors nominated him to become a Purebred Agent, but his fourth-level supervisor obstructed his nomination by refusing to request the required security clearance needed for him to become a Purebred Agent.[6] *Id.*

¶29    The appellant also claimed that, upon returning to work after completing his quarantine period, his first-line supervisor requested a meeting with him and his union steward on May 4, 2021. *Id.* at 36. According to the appellant, when he arrived at the meeting his first-line supervisor refused to allow the appellant to record the meeting. *Id.* To the extent the appellant is arguing that his first-line supervisor's refusal to allow him to record a disciplinary meeting was a personnel action, we disagree.

¶30    Section 2302(a)(2)(A) defines a "personnel action" as any one of 11 enumerated actions and "any other significant change in duties, responsibilities, or working conditions[.]" Neither of the above incidents fall under an enumerated personnel action. However, we will consider both incidents below when determining whether multiple actions collectively constituted a significant change in duties, responsibilities, or working conditions. *See Skarada*, 2022 MSPB 17, ¶¶ 16, 18, 29.

_____

[6] The appellant indicated that, as a result of the HRO investigation, his fourth-level supervisor was instructed to request the security clearance. IAF, Tab 1 at 39.

*Hostile Work Environment*

¶31    The appellant also alleged that he was subjected to a hostile work environment due to harassment by his supervisors.  IAF, Tab 1 at 34-35. Allegations of a hostile work environment may establish a personnel action in an IRA appeal only if they meet the statutory criteria under 5 U.S.C. § 2302(a)(2) (A), i.e., constitute a significant change in duties, responsibilities, or working conditions.  *See Skarada*, 2022 MSPB 17, ¶ 16.  In determining whether an appellant has suffered a "significant change" in his duties, responsibilities, or working conditions, the Board must consider the alleged agency actions both collectively and individually.  *Id.*, ¶ 16 (citing *Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003)); *see Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955-56 (Fed. Cir. 2020) (holding that an investigation may qualify as a personnel action under 5 U.S.C. § 2302(a) (2)(A)(xii) if, either alone or combination with other agency actions, the investigation changed the subject employee's working conditions).  Only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii).  *Skarada*, 2022 MSPB 17, ¶ 16.  Thus, actions that alone are not personnel actions may cumulatively be sufficiently severe or pervasive to qualify as a hostile work environment actionable in an IRA appeal. *Id.*, ¶¶ 16, 18, 29.

¶32    Here, we limit our discussion to the incidents that we find, above, are not personnel actions on their own.  These incidents include the appellant's fourth-level supervisor's alleged obstruction of the security clearance needed to proceed with the appellant's nomination to Purebred Agent in April 2021, and his first-level supervisor's refusal to allow the appellant to record a meeting on May 4, 2021.  IAF, Tab 1 at 36, 39.  In a comparable case, the Board found that an appellant failed to nonfrivolously allege that he was subjected to a hostile

work environment based on a number of actions by his supervisors, such as telling the appellant not to attend meetings or perform "extra duties" and declining to support the potential upgrade of his position, even when combined with three incidents of supervisors yelling at the appellant over the course of a year. *Skarada*, 2022 MSPB 17, ¶¶ 26-29. The fact that the appellant's assignment to collateral duties was delayed and that he was not allowed to record a meeting similarly fall short of the type of actions that have practical and significant effects on the type of work he performed or his day-to-day work environment. Therefore, we decline to consider these matters further.

<u>The appellant made a nonfrivolous allegation that his disclosure of a Privacy Act violation contributed to the threat to designate him as AWOL.</u>

¶33    To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Chambers*, 2022 MSPB 8, ¶ 14. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Id.*, ¶ 15; *see* 5 U.S.C. § 1221(e)(1). Due to our findings above, we are only considering here whether the appellant's Privacy Act violation disclosure was a contributing factor in the April 2021 threatened personnel action. We find that the appellant has met his jurisdictional burden.

¶34    The Board has held that personnel actions taken within 1 to 2 years of the protected activity satisfy the timing prong of the knowledge/timing test, but those that take place more than 2 years after the activity are too remote to satisfy the test. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63;

*Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 21 (2013). Here, the appellant nonfrivolously alleged that, no later than April 6, 2021, he made a protected disclosure of a Privacy Act violation. IAF, Tab 1 at 34-35; PFR File, Tab 1 at 8. He also has nonfrivolously alleged that, on April 25, 2021, less than a month after he made his disclosure, his second-level supervisor threatened to designate the appellant as AWOL when he quarantined per agency policy due to a COVID-19 exposure. IAF, Tab 1 at 38. Therefore, the appellant has nonfrivolously alleged that he meets the timing prong of the knowledge/timing test as to this personnel action.

¶35 We also determine that the record contains sufficient allegations to satisfy the knowledge prong of the knowledge/timing test at the jurisdictional stage. The knowledge prong can be established with allegations of either actual or constructive knowledge. *Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15. An appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id.*

¶36 According to the appellant, his fourth-level supervisor was initially tasked with assigning an investigator into the appellant's HRO email. IAF, Tab 1 at 38. He also alleges that his second-level supervisor threatened him with AWOL status on April 25, 2021, after his fourth-level supervisor demanded that the appellant return to work before his quarantine period had ended. *Id.* We recognize that there are questions regarding the information the appellant's fourth-level supervisor had, if any, by April 25, 2021, regarding the appellant's Privacy Act disclosure, and that supervisor's involvement in the threat to mark the appellant as AWOL. However, as noted above, we resolve any doubt or ambiguity as to whether the appellant made a nonfrivolous allegation in favor of finding jurisdiction. *See Skarada*, 2022 MSPB 17, ¶ 6. We conclude that his allegations are sufficient to establish contributing factor at the jurisdictional stage. Thus, we find that the appellant has raised a nonfrivolous allegation his protected

disclosure to the investigator into his HRO complaint contributed to the threatened AWOL status on April 25, 2021. Therefore, we remand this appeal for a decision on the merits.

## ORDER

¶37    For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:          _____
                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.